UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:  Anneli Nystrand, Debtor    CASE NO.: 21-400006-KKS
CHAPTER 7

Anneli Nystrand    ADV. NO.: 21-04003

        Plaintiff,

v.

Kingdom of Sweden.

        Defendant.
_____/

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Anneli Nystrand, pro se, files this Motion for Summary Judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure and in support thereof states as follows:

## I. INTRODUCTION

Plaintiff filed this Adversary action against the Kingdom of Sweden to determine if she is entitled to a discharge of the debt in the amount of $163,195.81, at an interest rate of 5.37% to be adjusted annually, in the Summary Final Judgment entered against her on November 2, 2020, in the Second Judicial Circuit Court in and for Leon County, case number 2018-CA-2077. This does not include any attorney fee claims they may make at a future date. (*See* Exhibit 1).

1

Plaintiff maintains that payment of said debt constitutes undue hardship pursuant to 11 U.S.C s. 523(a)(8) as a matter of law.

## II. STATEMENTS OF MATERIAL FACT

Because Congress has never defined "undue hardship," most bankruptcy courts utilize the analysis in *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987). The debtor has the burden to satisfy each of the three prongs under the *Brunner* test. *Gesualdi v. Educ. Credit Mgmt. Corp. (In re Gesualdi)*, 505 B.R. 330, 338 (Bankr. S.D. Fla. 2013), as follows:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

Plaintiff is able to establish all three of these elements of undue hardship.

### A. Current Inability to Repay the Loans; Minimal Standard of Living

1. Plaintiff's monthly budget of income and expenses is attached hereto. (*See* Exhibit 2). Plaintiff's net monthly income is $3,932.52. (*See* Exhibit 3). After deducting only necessary living expenses in the mount of $4,025 for Plaintiff and her 13-year-old daughter, there is a monthly deficit of $92.48.

2. Plaintiff's mortgage payment is 895 per month. (*See* Exhibit 4).

3. There is no availability of less expensive housing in Tallahassee, FL. (*See* Exhibit 5).

4. Plaintiff is only licensed to practice law in Florida and the Tallahassee cost of living index is 93.9% which is among the lowest in Florida. (*See* Exhibit 6).

5. Plaintiff's car payment is $340 per month. (*See* Exhibit 7).

6. Plaintiff has three (3) loans, in addition to the debt to the Kingdom of Sweden, not being discharged in her underlying bankruptcy proceeding in case number 21-400006-KKS.

7. The first debt not being discharged is US Department of Education student loans in the amount of $50,408.94, which become payable on January 31, 2022, when the COVID-19 forbearance period ends. (*See* Exhibit 8).

Plaintiff is participating in the Public Service Loan Forgiveness program (hereinafter "PSLF"), a United States government program that was created under the College Cost Reduction and Access Act of 2007 to provide indebted professionals a way out of their federal student loan debt burden by working full-time in public service. Plaintiff meets the requirements of PSLF by being employed by a state government full-time, having only Direct Loans, and paying back the loans under an income-driven re-payment plan. The monthly payment on

Plaintiff's US Department of Education student loans under the Pay as You Earn re-payment plan (PAYE) is $515. (*See* Exhibit 9).

8. The second loan not being discharged is US Small Business Administration Economic Disaster Loan (EIDL) in the amount of $15,200, which becomes due on May 30, 2022, with monthly payments of $75. *(See* Exhibit 10).

9. The third loan not being discharged is a US Department of the Treasury, Internal Revenue Service federal tax debt in the amount of $19,312,37. Plaintiff had been paying $100 per month toward this debt prior to the initiation of her bankruptcy proceeding and estimates the current balance is $15,000. (*See* Exhibit 11).

## B. Future Inability to Repay the Loans; Additional Circumstances

1. Plaintiff is 57 years old and has a 13-year-old daughter who resides with Plaintiff 100% of the time since August 2020. Plaintiff will reach the federal retirement age of 67 in ten (10) years, approximately at the same time her US student loans will be paid in full via forgiveness pursuant to the PSLF program.

2. Upon her divorce in 2013, Plaintiff became unemployed and applied for more than 200 attorney positions in Florida during 2013 and 2014, including both State and private law firm positions, without receiving a single job interview.

3. In early 2015, Plaintiff had been unemployed for almost 2 years, had depleted

her savings and retirements funds, and was receiving SNAP benefits, "food stamps", for her daughter.

4. Upon finally securing employment in mid-2015, Plaintiff was employed at University Lending Group for 1 year earning $30,000/year. Plaintiff subsequently worked for Thurman Law Firm 2016-2017, earning $39,000/year, and for the Law Office of Lee Meadows from 2017-2018, earning $50,000/year.

5. In December 2019, Plaintiff started Nystrand Law, LLC., a law firm, and her adjusted gross income for 2019 was $15,168. (*See* Exhibit 12).

6. Plaintiff's adjusted gross income for 2020 was 33,953. (*See* Exhibit 13).

7. Plaintiff is currently employed as an attorney for the State of Florida earning $56,000 per year. State of Florida annual pay raises are limited to a cost-of-living increase, currently 1.6%. (*See* Exhibit 14).

8. In order to continue to qualify under the PSLF program for US student loan forgiveness, Plaintiff must remain employed by a governmental or not-for-profit entity. Therefore, it is unlikely that Plaintiff's future financial situation will improve in the next 10 years based her age, prior income history, and current financial situation.

C. **Good Faith Effort to Repay Student Loans**

1. Plaintiff is in good standing on her US Department of Education

Loans. These loans will become due on January 31, 2022, when the COVID-19 forbearance ends.

2. Plaintiff graduated from University of Miami School of Law in 1995 with approximately $60,000 in US Department of Education student loans. In 2010, Plaintiff paid off in full the $60,000 law school loans which were serviced by CitiBank. Citibank stopped offering student loans in 2010 when they sold their student loan division, The Student Loan Corp. As a result, Sallie Mae assumed $26 billion of Citi's federal student loans, the Department of Education assumed $4.7 billion in federal loans, and Discover assumed $4 billion in private student loans. Plaintiff has attempted to locate her CitiBank student records evidencing her pay-off of her law school loans, however, according to the US Department of Education, Plaintiff would have to get these records directly from CitiBank. Calls by Plaintiff to CitiBank to secure these documents have not been successful as of yet, however, these records should reasonably be available by either CitiBank or the US Department of Education.

3. As to the Kingdom Plaintiff of Sweden student loans, Plaintiff disputed the accuracy of the debt and was involved in litigation, pro se, regarding that debt for several years in the Second Judicial Circuit Court in and for Leon County, case number 2018-CA-2077. An Affidavit was filed by Plaintiff to that effect on July 20, 2020. (*See* Exhibit 15).

6

4. When the judge during the circuit court litigation ordered the parties to Mediate the Kingdom of Sweden stated it was "prohibited from accepting less than the balance due on the Account of Debt" and filed a motion to dispense with mediation in the Second Judicial Circuit case. (*See* Exhibit 16).

5. Plaintiff was, and is, without means to pay in excess of $163,000 in a lump sum, therefore, any good faith effort regarding the Kingdom of Sweden debt was not made possible.

### III.  MEMORANDUM OF LAW

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.*

7

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. *Celotex,* 477 U.S. at 323. Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby,* 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted). "A mere `scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* at 1577 (citing *Anderson,* 477 U.S. at 252).

At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Morrison v. Amway Corp.,* 323 F.3d 920, 924 (11th Cir. 2003).

**Dischargeability of Student Loans in Bankruptcy**

Congress' main purpose in enacting the Bankruptcy Code was to ensure the insolvent debtor a fresh start by discharging his prepetition debts. *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234 (1934)). 11 U.S.C. § 523(a)(8) provides that education loans extended by or with the aid of a governmental unit or nonprofit institution solely on the basis of the student's future earnings potential be discharged in bankruptcy.

Several reasons have been cited to explain why Congress excepted student loans from a discharge in bankruptcy. One claim is that it was in response to "the perceived need to rescue the student loan program from insolvency, and to also prevent abuse of the bankruptcy system by students who finance their higher education through the use of government backed loans, but then file bankruptcy petitions immediately upon graduation even though they may have or will soon obtain well-paying jobs, have few other debts, and have no real extenuating circumstances to justify discharging their educational debt." *Green v. Sallie Mae (In re Green)*, 238 B.R. 727, 732-33 (Bankr. N.D. Ohio 1999) (citing "Report of the Commission on the Bankruptcy Laws of the United States," H.R. DOC. NO. 93-137, 93d Cong., 1st Sess., Pt. II 140, n.14)

The relevant statutory language of 11 U.S.C. s 523(a)(8) provides:

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . .
(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
(A)(i)  an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
(ii)  an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

## Minimal Standard of Living

The first *Brunner* factor requires Plaintiff to prove that based on her current income and expenses she cannot maintain a "minimal" standard of living for herself and her child if she is forced to repay the debt to the Kingdom of Sweden. Courts have taken differing views about what constitutes a "minimal" standard of living. Only a few courts still use the United States Department of Health and Human Services Poverty Guidelines as a "bright line" determination of the minimal standard of living for student loan dischargeability purposes.

A minimal standard of living lies somewhere between "poverty and mere difficulty." The court must examine the debtor's living situation to ensure that the debtor has no unnecessary and frivolous expenses; however, the debtor should not be forced to live in abject poverty with no comforts. *McLaney v. Kentucky Higher Educ. Assistance Authority (In re McLaney)*, 314 B.R. 228, 234 (Bankr. M.D. Ala. 2004).

Judge Benjamin Cohen described in *In re Ivory*, a minimal standard of living as "a measure of comfort, supported by a level of income, sufficient to pay the costs of specific items recognized by both subjective and objective criteria as basic necessities." *Ivory v. United States Dep't of Educ. (In re Ivory)*, 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001). Judge Cohen listed numerous basic necessities needed to maintain a minimal standard of living:

1. People need shelter, shelter that must be furnished, maintained, kept clean, and free of pests. In most climates it also must be heated and cooled.

2. People need basic utilities such as electricity, water, and natural gas. People need to operate electrical lights, to cook, and to refrigerate. People need water for drinking, bathing, washing, cooking, and sewer. They need telephones to communicate.

3. People need food and personal hygiene products. They need decent clothing and footwear and the ability to clean those items when those items are dirty. They need the ability to replace them when they are worn.

4. People need vehicles to go to work, to go to stores, and to go to doctors. They must have insurance for and the ability to buy tags for those vehicles. They must pay for gasoline. They must have the ability to pay for routine maintenance such as oil changes and tire replacements and they must be able to pay for unexpected repairs.

5. People must have health insurance or have the ability to pay for medical and dental expenses when they arise. People must have at least small amounts of life insurance or other financial savings for burials and other final expenses.

6. People must have the ability to pay for some small diversion or source of recreation, even if it is just watching television or keeping a pet. *Id.*

**Additional Circumstances**

The second Brunner factor requires the debtor to show additional circumstances indicating that her state of affairs (that is, the inability to maintain a minimal standard of living if forced to repay the student loans) is "likely to persist for a significant portion of the repayment period." *Brunner*, 831 F.2d at 396. These circumstances must demonstrate a "certainty of hopelessness, not simply a present

inability to fulfill financial commitment." *Nys v. Educ. Credit Mgmt. Corp. (In re Nys)*, 308 B.R. 436, 443 (B.A.P. 9th Cir. 2004). See also *Rosenberg v. Educational Credit Management Corp.*, No. 20-CV-00688 (S.D.N.Y. Sept. 30, 2021)

While there is no definitive list of what are considered "additional circumstances," pursuant to *In re Nys*, they may include:

1. Serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement;
2. The debtor's obligations to care for dependents;
3. Lack of, or severely limited education;
4. Poor quality of education;
5. Lack of usable or marketable job skills;
6. Underemployment;
7. Maximized income potential in the chosen educational field, and no other more lucrative job skills;
8. Limited number of years remaining in work life to allow payment of the loan;
9. Age or other factors that prevent retraining or relocation as a means for payment of the loan;
10. Lack of assets, whether or not exempt, which could be used to pay the loan;
11. Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income;
12. Lack of better financial options elsewhere. *In re Nys*, 308 at 446-47.

**<u>Good Faith Effort to Repay Student Loans</u>**

Under the third prong of the *Brunner* test, the Debtor must show that she has made a good faith effort to repay her student loans. *See Hemar Ins. Corp. of Am. v. Cox (In re Cox),* 338 F.3d 1238, 1242 (11th Cir. 2003) at 1241. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses; his default should result, not from his choices, but from factors

beyond his reasonable control." *In re Mosley,* 494 F.3d at 1327 (citing *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir. 1993)).

### Recent Developments in Discharging Student Loan Debt

In 2020, Chief Bankruptcy Judge Morris in the Bankruptcy Court for the Southern District of New York reinterpreted *Brunner's* "undue hardship" test and discharged over $220,000 of debtor Kevin Jared Rosenberg's student loan debt. *Rosenberg v. N.Y. State Higher Educ. Servs. Corp. (In re Rosenberg),* 610 B.R. 454 (Bankr. S.D.N.Y. 2020).

The court found that "[t]he harsh results that are often associated with *Brunner* are actually the result of the cases interpreting *Brunner*. Over the past 32 years, many cases have pinned on *Brunner* punitive standards that are not contained therein." In contrast, Judge Morris held that for debtors "who have been out of school and struggling with student loan debt for many years, the test is fairly straight-forward and simple." *Id.*

The *Rosenberg* opinion sets forth how cases that followed *Brunner* resulted in "retributive dicta [that] were then applied and reapplied so frequently in the context of *Brunner* that they have subsumed the actual language of the *Brunner* test. They have become a quasi-standard of mythic proportions so much so that most people (bankruptcy professionals as well as lay individuals) believe it impossible to discharge student loans." The court made clear, however,

that it was not going to follow suit: "[t]his Court will not participate in perpetuating these myths." *Id.*

On September 29, 2021, Judge Philip L. Halpern ruled, in the appeal that followed Rosenberg's student loan discharge, that because neither the debtor nor the creditor presented sufficient evidence to establish or counter the three prongs of the *Brunner* undue hardship test, neither was entitled to summary judgment on the debtor's adversary complaint seeking discharge of his student loan. <u>Judge Halpern specifically stated in the opinion that he was expressing no opinion on whether the student loan at issue may be discharged in bankruptcy</u>. *Emphasis added.* *Rosenberg v. ECMC*, No. 20-688 (S.D. N.Y. Sept. 29, 2021).

Judge Halpern reviewed the debtor's list of expenses and found that the debtor failed to establish that they were necessary to maintain a minimal standard of living. While the court found the debtor failed to justify his expenses and was reluctant to enter into an income-based repayment program, it also found that ECMC failed to challenge the expenses except in broad terms relating to the debtor's lack of legal work and his choice of living arrangements. Therefore, the court found neither party was entitled to summary judgment on the first *Brunner* prong. *Id.*

Turning to the second prong of the test, whether there were additional circumstances that were likely to persist, the court noted that the circumstances

must be exceptional and beyond the debtor's control. Judge Halpern opined that "courts may consider a debtor's medical condition, disability, or responsibility for his or her dependents. Courts have also considered a debtor's assets, career, income or potential for increased career and financial opportunities, and whether a debtor has maximized [his] income potential, has more lucrative job skills, has limited working years left, and whether there are factors that would prevent the debtor from retraining or relocating." *Id.*

The court found that Rosenberg had moved out of his Brooklyn, New York, studio apartment and leased a house in Beacon, New York. The Beacon lease was $2,150 per month, a $700 increase from his rent in Brooklyn. The court concluded that the debtor's move to a more expensive house, his failure to seek and maintain a job in law, and his refusal to take part in a reduced repayment plan, all militated against summary judgment on this issue, and "offers no substantive explanation as to why his expenses are necessary to maintain a minimal standard of living and points to no admissible evidence supporting his conclusory argument that they are, indeed, necessary". *Id.*

## Distinguishing Plaintiff's Situation from the Summary Judgment Denial in Rosenberg

In contrast to Judge Halpern's denial of summary judgement for the debtor in Rosenberg, Plaintiff has a 13-year-old dependent, is 57-years-old, has resided in the same townhouse since her divorce in 2012, with a monthly mortgage payment

15

is $895, and drives a 2014 Nissan Juke with almost 80,000 miles, with monthly payments of $340. She paid off her US Department of Education student loans from law school in 2010, is in good standing and current on her US Department of Education student loans becoming due on January 31, 2022, and is enrolled in a 10-year PSLF payment plan. In addition, plaintiff is employed in the profession she attended school for, as an attorney, and through no fault of her own, has not been able to obtain a yearly salary as an attorney in excess of $56,000 since at least 2012.

Furthermore, plaintiff has no savings and no assets except her homestead and automobile. Plaintiff also has no savings, and no retirement accounts prior to becoming employed with the State of Florida in February of 2021.

Plaintiff's credit score has remained at or below 650 since approximately 2014 (*See* Exhibit 17). As a result, Plaintiff has been unable to refinance her home or car, and while the interest on her home is 3.25%, the interest on her car is 15%. Plaintiff has no credit cards for emergencies and if the Kingdom of Sweden Summary Final Judgment and debt remains, plaintiff's financial situation and ability to obtain credit to finance any large, future purchases, is unlikely to change. Plaintiff's car is almost 8 years old, and it can be expected that it will need to be replaced within the next 24-36 months. All of plaintiff's appliances, i.e., washer, dryer, refrigerator, dishwasher, and microwave, were purchased in 2012 and are

almost 10 years old. Given plaintiff's financial situation and complete lack of credit worthiness, a broken-down vehicle or broken refrigerator, could prove disastrous. Plaintiff has no family in the United States or any other support to rely on for assistance for herself or her child.

In addition, in January 2021, the Kingdom of Sweden scheduled a deposition of plaintiff, clearly in an effort to begin garnish Plaintiff's assets and/or income. (*See* Exhibit 18).

Finally, payment of the Kingdom of Sweden debt in the amount of $163,000 over 13 years, until plaintiff's 70th birthday, at a 1% interest rate, would result in monthly payments in the amount of $1,114,69, in addition any attorney fee claims they would make at a future date. (*See* Exhibit 19).

Consequently, Plaintiff cannot pay the debt to Sweden while maintaining a minimal standard of living for her and her daughter. Payment of the debt to the Kingdom of Sweden would impose an undue hardship on Plaintiff.

WHEREFORE, Plaintiff, Anneli Nystrand, respectfully requests that this honorable Court:

1. Determine that in accordance with 11 U.S.C. s. 523(a)(8), the payment of Plaintiff's debt to Sweden would impose an undue hardship.
2. Determine that Plaintiff's debt to the Kingdom of Sweden, and any future claims for attorney fees related to this debt, are hereby discharged.

3. Grant such other relief this Court deems just and proper.

Dated: November 21, 2021                    Respectfully submitted,

*Anneli Nystrand*
Anneli Nystrand
P.O. Box 12611
Tallahassee, Florida 32317
850-241-3914
anneli@nystrandlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to Allison L. Friedman, Esq., on December 21, 2021, via e-mail to ralfriedman@hotmail.com

*Anneli Nystrand*
Anneli Nystrand
P.O. Box 12611
Tallahassee, Florida 32317
850-241-3914
anneli@nystrandlaw.com